```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                       08-CV-5340(JMR/SRN)
```

Michael J. Pint, on behalf of  )
Lehigh One, LLC, a Minnesota   )
limited liability company      )
                               )
          v.                   )      ORDER
                               )
William Breckner               )

This case arises out of a bad real estate partnership, and an even worse real estate market (or maybe it's the other way around). In either case, plaintiff, Michael J. Pint, one of the owners of Lehigh One, LLC ("Lehigh One"), seeks to invalidate a mortgage given by his business partner, George N. Nelson, Jr., to the defendant. For the reasons set forth herein, the Court finds the mortgage is valid, and dismisses this case.

I. Background[1]

In September, 2006, defendant, William Breckner, loaned money to George Nelson in exchange for a mortgage on 18 real estate lots in Florida. Plaintiff and Nelson jointly owned Lehigh One, which owned the 18 lots. No party denies that, over the past few years, Florida's real estate development market has been decimated.

---

[1] The Court considers all facts in the light most favorable to the non-moving party. Because these motions are considered pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), any facts the Court finds are taken from the parties' pleadings, and are not considered determinations on the merits.

Nelson failed to tell plaintiff about the loan or the mortgage. He has since filed for bankruptcy. In late 2007, plaintiff discovered Nelson's loan and Breckner's mortgage. This lawsuit seeks to void the mortgage. Each party seeks summary judgment. Defendant's motion is granted; plaintiff's motion is denied.

A. <u>William Breckner</u>

Over the course of a long business relationship, Arizona resident William Breckner and his father, Ron, extended many loans to George Nelson.[2] Among these was a July, 2004, $225,000 loan to Nelson on behalf of Trail Head Land Development Corporation - a Minnesota corporation owned solely by Nelson. The Breckners' loan was secured by a mortgage on property in Wright County, Minnesota.

In September, 2006, Nelson asked the Breckners for a loan of an additional $100,000. In exchange, Nelson sought release of the Wright County property mortgage, and promised a $500,000 mortgage on 18 vacant lots in Lehigh Acres, Florida. Nelson told the Breckners Lehigh One owned the lots. Nelson later testified he told Ron Breckner of plaintiff's 50% ownership in Lehigh One. (Nelson Dep. 82:4-19, 83:12-23.) William Breckner states he was

---

[2] Throughout this relationship, Ron Breckner acted for William Breckner through power of attorney. When applicable, the Court refers to the parties collectively as "the Breckners."

unaware of plaintiff's interest in Lehigh One. In either case, William Breckner agreed to the deal.

Wendy Berndt, the Breckners' closing agent, prepared the loan and mortgage documents and asked Nelson for a copy of Lehigh One's operating agreement. (Berndt Dep. 86:1-24.) When Nelson claimed he could not find a copy, Berndt visited the Minnesota Secretary of State website and found documents corroborating Lehigh One's existence, and Nelson's role as its managing member. (Berndt Dep. 88:11-23.) Having confirmed the company's validity, Berndt drew up the mortgage documents, which included a very specific choice of law provision dealing both with questions of certain procedural matters and the mortgage's validity.

The loan documents also included a mortgagor's affidavit in which Nelson swore the "contemplated sale or mortgage of said property by said entity is pursuant to proper authority." (Mortgagor's Aff. ¶ 11.) After Nelson and Breckner signed the documents, William Breckner wired $100,000 to Nelson's personal bank account.

B. <u>Michael Pint</u>

Lehigh One's LLC agreement requires that any mortgage granted by the company be approved by 67% of Lehigh One's members. (Weil Aff. Ex. F at 12.) This meant neither partner could mortgage the property absent the other's consent. In spite of this requirement,

Nelson did not obtain plaintiff's consent before mortgaging the Florida lots.

C. The Lawsuit

In late 2007, when plaintiff discovered the mortgage on the Florida lots, he asked Nelson to have the mortgage declared invalid. Nelson declined to do so.

Plaintiff then sued William Breckner in Hennepin County District Court, asking the Court to declare the mortgage void. The matter was timely removed to federal court, pursuant to 28 U.S.C. §§ 1332 & 1441(b). The parties have filed cross-motions for summary judgment.

II. Discussion

A. Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This Court examines the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences. Hammond v. Northland Counseling Ctr., Inc., 218 F.3d 886, 891 (8th Cir. 2000). The moving party is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential

element of [his] case with respect to which [he] has the burden of proof." Id.

B. Choice of Law

The parties do not agree whether Minnesota or Florida law applies to this dispute. Plaintiff claims Minnesota law governs because Minnesota's Limited Liability Company Act ("the LLC Act") "expresses the Minnesota legislature's intent" that Minnesota law apply "to Minnesota limited liability companies operating in other [s]tates." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 3 (citing Minn. Stat. § 322B.23).)

Defendant acknowledges the LLC Act applies to Lehigh One's internal affairs, but claims Florida law applies to the parties' real estate mortgage dispute because of the mortgage's choice of law provision. The Court agrees with defendant.

When sitting in diversity, a court applies the forum state's choice of law principles. Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1393 (8th Cir. 1997). In doing so, this Court recognizes Minnesota has opted to enforce contractual choice of law provisions. See Milliken & Co. v. Eagle Packaging, 295 N.W.2d 377, 380 n.1 (Minn. 1980); Combined Ins. Co. of Am. v. Bode, 77 N.W.2d 533, 536 (Minn. 1956) ("[T]he parties, acting in good faith and without an intent to evade the law, may agree that the law of either state shall govern."), rev'd on other grounds by Milbank Mut. Ins. Co. v. U.S. Fidelity & Guaranty Co.,

332 N.W. 2d 160, 163 (Minn. 1983). Minnesota courts uphold choice of law provisions entered into by limited liability companies. See, e.g., <u>Costa v. Carambola Partners, LLC</u>, 590 F. Supp. 2d 1141, 1152 (D. Minn. 2008) (applying Virgin Islands law, pursuant to parties' choice of law provision, to a contract entered into by an LLC). Here, the parties entered into a carefully-crafted choice of law agreement stating:

> . . . [m]ortgage shall be governed by, construed and enforced in accordance with the laws of the State of Minnesota, except and only to the extent of procedural matters related to the perfection and enforcement by Mortgagee of his rights and remedies against the Property, which matters shall be governed by the laws of the State of Florida. However, in the event that the enforceability or validity of any provision of this Mortgage is challenged or questioned, such provision shall be governed by whichever applicable state or federal law would uphold or would enforce such challenged or questioned provision.

(Compl. Ex. B.)

The Court does not address the final sentence's validity or applicability because it finds Florida law applies to uphold the mortgage. Neither party has suggested this choice-of-law clause was drafted in bad faith.

Plaintiff argues this choice of law provision compels the Court's application of Minnesota law because this case does not concern "[m]atters related to the perfection and enforcement of [the] mortgage." (Pl.'s Mem. Opp. Summ. J. 9.) The Court again disagrees.

6

The plaintiff asks this Court to declare the mortgage void. If the mortgage were declared void, by definition, it could not be enforced. Its enforcement and its effect on the Lehigh One lots is the essence of this case. And that is precisely the area the choice of law clause directs "shall be governed by the laws of the state of Florida."

Finally, seeking to apply Minnesota law, plaintiff argues Florida courts would apply Minnesota law to this dispute. For support, he cites Florida LLC law explaining Florida cannot "regulate the organization or internal affairs of a foreign limited liability company authorized to transact business in [Florida]." Fla. Stat. § 608.505(3). The Court acknowledges Florida's statutory inability to regulate the internal affairs of an out-of-state LLC, but this dispute does not go to the governance of the Minnesota LLC; it concerns the validity and rights accrued under a mortgage. Accordingly, the parties' choice-of-law provision compels this Court's application of Florida law.[3]

---

[3] The Court notes, however, that even if the Court applied Minnesota law, the mortgage would remain valid. Plaintiff cites Minn. Stat. § 322B.693 for the proposition that "[a] limited liability company may lend money to, guarantee an obligation of, become a surety for, or otherwise financially assist a person" only when the transaction is approved by the majority of the governors. A mortgage is not, however, a loan, guarantee, or surety. To the contrary, a mortgage is an interest in land. Jackson v. Mortgage Elec. Registration Sys., Inc., 770 N.W. 2d 487, 493 (Minn. 2009). ("[T]he interest in the land attaches to the debt obligation") (quotations omitted). As such, plaintiff's proffered statute does not apply.

A mortgage is not part of business governance, nor is it an agreement between two people. It is, instead, an "interest in land created by a written instrument providing security for the performance of a duty or the payment of a debt." Transcon Trailers, Inc. v. Northland Ins. Co., 436 So. 2d 380, 382 (Fla. Dist. Ct. App. 1983) (citing Black's Law Dictionary 1110 (5th ed. 1979)). Nelson proffered Lehigh One's property to provide security for a loan. Where defendant and Lehigh One entered a mortgage in compliance with Florida law, the land remains bound by the mortgage's terms and conditions.

C. Mortgage Validity

Here, the Court confronts a facially valid mortgage. Under Florida law, "[i]nstruments and documents providing for the acquisition, mortgage, or disposition of property of the limited liability company shall be valid and binding" if executed in accordance with Florida law. Fla. Stat. § 608.425(3). Under Florida law, an LLC member may act in the ordinary course of "the limited liability company's business or business of the kind carried on by the company," and the member's actions will bind the LLC, "unless the member had no authority to act for the limited liability company in the particular matter and the person with whom the member was dealing knew or had notice that the member lacked authority." Fla. Stat. § 608.4235(1)(a).

Florida courts, applying similar corporate law, agree a mortgage executed by a corporation's officer is presumed "valid whether or not the officer signing for the corporation was authorized to do so by the board of directors, in the absence of fraud in the transaction by the person receiving it." Fla. Stat. § 692.01; Ocean Bank of Miami v. INV-UNI Inv. Corp., 599 So. 2d 694, 696 (Fla. Dist. Ct. App. 1992); Prezioso v. Cameron, 559 So. 2d 423, 424 (Fla. Dist. Ct. App. 1990). In Prezioso, a company's shareholder challenged the validity of a mortgage granted on company property, signed by the company's president and two directors. The Florida appeals court upheld the mortgage, citing the Florida legislature's intent to "allow third parties who transact business with corporations in an honest fashion to have confidence that the transactions are valid." Prezioso, 599 So.2d at 424.

In Ocean Bank of Miami, a Florida appeals court upheld a mortgage despite a lender's failure to investigate the borrower's authority to enter the mortgage, stating:

> [a]ny instrument executed in accordance with [Florida law] is deemed valid as against third parties even though the officer was without authority to enter into the transaction, unless there was fraud by the receiving party. Id. at 695.

599 So. 2d at 695.

Here, Nelson sought a mortgage which appeared, to all the world, to be "in the ordinary course [of] the limited liability

9

company's business or business of the kind carried on by the company." Fla. Stat. § 608.4235(1)(a). Lehigh One was founded as a real estate investment company. Such firms regularly sell, mortgage, and buy property as part of their business. Indeed, the LLC's operating agreement states the company will mortgage property with 67% member approval. Accordingly, the Court finds Nelson's actions bind the LLC, "unless the member had no authority to act for the limited liability company in the particular matter and the person with whom the member was dealing knew or had notice that the member lacked authority." Id. Plaintiff may well be correct in asserting that Nelson lacked the legal authority to grant the mortgage, but he has failed to show, and does not argue, William Breckner knew this.

Breckner relied on representations made by Nelson. He had previously loaned money to Nelson's companies and has testified, without contradiction by plaintiff, he did not know of plaintiff's interest in Lehigh One. (William Breckner Aff. ¶ 5.) Nelson signed a mortgagor's affidavit swearing "contemplated sale or mortgage of said property by said entity is pursuant to proper authority." (Mortgagor's Aff. ¶ 11.) From this, the Court must conclude Breckner proceeded on the reasonable assumption Nelson had authority to mortgage Lehigh One property.

Plaintiff, however, argues Lehigh One did not receive consideration for the mortgage, and William Breckner should have

10

known about Nelson's lack of authority to grant a mortgage. Accordingly, plaintiff asks the Court to deny defendant's motion for summary judgment and grant its motion. The Court does not agree.

1. Consideration

Nelson claims he cannot recall whether he received $100,000 in exchange for the mortgage on the Florida lots. Plaintiff argues a genuine issue of material fact exists as to whether Lehigh One received consideration in exchange for the mortgage. Specifically, plaintiff complains the mortgage "was not given in exchange for any obligations owed by Lehigh One." (Pl.'s Mem. Supp. Summ. J. 4.) Plaintiff acknowledges, however, that "in connection with the [m]ortgage Bill Breckner did make an additional advance of $100,000 that was wired directly to Nelson's personal bank account." (Id.) There is no failure of consideration here.

Florida law recognizes securing pre-existing third-party debt as sufficient consideration for a mortgage. See F.D.I.C. v. Diamond C Nurseries, Inc., 629 So. 2d 157 (Fla. Dist. Ct. App. 1993). In Diamond C Nurseries, Inc., Thomas Waldron, the nurseries' president, mortgaged company property to secure loans for his friends. The appeals court held that, even if the company received no money from the deal, the consideration flowing to Waldron's friends "was consideration sufficient to support the mortgage." Id. at 160 (citing Fla. Asphalt Pavement Mfg. Co. v.

11

Fed. Reserve Bank, 76 F.2d 326, 328 (5th Cir. 1935) ("Consideration may be given to the promisor or to some other person. It may be given by the promisee or some other person.")). Here, Nelson granted the mortgage, in part, to secure pre-existing debt owed to Breckner. This consideration clearly flowed to plaintiff's business associate; as such, the Court finds the payment "consideration sufficient to support the mortgage."

### 2. Imputing Knowledge

Lacking evidence showing the Breckners had actual knowledge that Nelson could not mortgage the property himself, plaintiff argues the Breckners should have known Nelson lacked the authority to do so. Plaintiff notes Nelson told Ron Breckner plaintiff held a 50% interest in Lehigh One. (Nelson Dep. 82:4-19, 83:12-23.) Plaintiff also states Wendy Berndt "testified that she knew that she needed to review Lehigh One's operating agreement to effectuate the transaction but did not do so." (Pl.'s Mot. Opp. Summ. J. 15.) From these facts, plaintiff contends William Breckner should have known about plaintiff's interest in Lehigh One and investigated further before accepting the mortgage. He is wrong.

Understandably, plaintiff cites no law imposing a duty to investigate or review an LLC's operating agreement before loaning money. This is because there is no such duty. While Wendy Berndt testified she visited the Minnesota Secretary of State website to confirm the existence of Lehigh One, LLC, and to confirm George

Nelson served as a managing member, this does not imply a duty to review its governing documents.

More importantly, however, plaintiff cites no evidence showing the Breckners knew or had notice Nelson lacked authority to grant a mortgage. See Fla. Stat. § 608.4235 (LLC members may sign instruments in the company's name "unless the member had no authority to act" and "the person with whom the member was dealing knew or had notice that the member lacked authority"). There is no suggestion William Breckner attempted to defraud plaintiff or place a secret mortgage on his property. Even if he knew plaintiff had an interest in Lehigh One, this would not bar an LLC officer from placing a mortgage on a piece of property it owned. The law imposes no duty upon a mortgagee to ferret out internal business arrangements of an LLC with whom he engages in business. In the absence of any allegations of fraud, the mortgage remains valid.

The Court finds that no reasonable jury could conclude, based on this evidence, that the Breckners be imputed to have known Nelson had any legal disability which prevented him from giving the mortgage in question.

III. Conclusion

Plaintiff chose to enter into a business with George Nelson. Nelson, in turn, mortgaged the business's property and declared bankruptcy. While these events are unfortunate, these facts cannot invalidate the mortgage. Where William Breckner had no reason to

suspect Nelson lacked authority to grant the mortgage, and Lehigh One received consideration in exchange for the mortgage, the mortgage remains valid.

Accordingly, IT IS ORDERED that:

1. Defendant's motion for summary judgment [Docket No. 27] is granted.

2. Plaintiff's motion for summary judgment is denied [Docket No. 34].

3. Plaintiff's complaint is dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 18, 2009

s/James M. Rosenbaum  
JAMES M. ROSENBAUM  
United States District Judge